HENRY S. MCDONALD, APPELLEE, V. UNION PACIFIC RAIL-
ROAD COMPANY, APPELLANT.

FILED NOVEMBER 18, 1903. No. 12,844.

Courts: JURISDICTION: HOMESTEAD LAWS. The courts of this state are
without jurisdiction to compel the conveyance of lands, subject
to entry and settlement under the homestead laws of the United
States, to a person who has been denied the privilege of making
such entry and settlement by the officials of the United States
land department.

APPEAL from the district court for Buffalo county:
HOMER M. SULLIVAN, JUDGE. *Reversed and dismissed.*

*William R. Kelly, John N. Baldwin* and *Edson Rich,*
for appellant.

*Byron G. Burbank, contra.*

AMES, C.

This action was begun in the district court for Buffalo
county on the 10th day of November, 1899. The petition
alleges that the defendant is the successor in interest and
in title of the Union Pacific Railroad Company, created
by act of congress of July 1, 1862 (U. S. Statutes at
Large, vol. 12, p. 489, ch. 120), entitled "An act to aid
in the construction of a railroad and telegraph line from
the Missouri river to the Pacific ocean, and to secure to the
government the use of the same for postal, miltary and
other purposes." That this act contains the following
grant expressed by section 3 thereof, to wit:

"*And be it further enacted,* That there be, and is hereby,
granted to the said company, for the purpose of aiding in
the construction of said railroad and telegraph line, and
to secure the safe and speedy transportation of the mails,
troops, munitions of war, and public stores thereon, every
alternate section of public land, designated by odd num-
bers, to the amount of five alternate sections per mile on
each side of said railroad, on the line thereof, and within

the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a preemption or homestead claim may not have attached, at the time the line of said road is definitely fixed: *Provided,* That all mineral lands shall be excepted from the operation of this act; but where the same shall contain timber, the timber thereon is hereby granted to said company. And all such lands, so granted by this section, which shall not be sold or disposed of by said company within three years after the entire road shall have been completed, shall be subject to settlement and preemption, like other lands, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company."

That among the lands covered by said grant is the northwest quarter of section seventeen (17), in township nine (9), north of range seventeen (17), west of the 6th principal meridian, in said Buffalo county in this state, and that on the 3d day of March, 1899, more than three years had elapsed after the entire completion of said railroad, during which said quarter section had remained unsold and undisposed of by said railroad company, its successors or assigns; that on said last named day the plaintiff, being a citizen of the United States, had tendered to the register of the United States land office for the district in which said quarter section lies, an application to enter said lands and settle upon them as a homestead under the public land laws of the United States, and had accompanied said tender with a tender to said register, of $380 and the fees required by law, and by filing with him affidavits in compliance with sections 2289 and 2290, chapter 5, page 419 of the Revised Statutes of the United States as amended, but that said register rejected said tenders and refused to permit the plaintiff to make said entry and settlement, of all of which circumstances and proceedings the defendant had due and written notice before it became a purchaser of or interested in said lands, and that, on the said 3d day of March, the plaintiff also tendered to the

defendant the sum of $380 in money and demanded from it leave to enter said lands as a homestead, and demanded a conveyance of them to himself, both of which demands the defendant refused, but that said tender had ever since that time been maintained and kept good. The petition concludes with a prayer that the defendant be decreed to accept said tender, and to convey the title to said quarter section to the plaintiff, and to permit the plaintiff to enter into possession of the same, and for general relief.

A demurrer to the petition was overruled and, after issues had been joined by answer, a trial ensued, resulting in a judgment for the plaintiff, to reverse which this proceeding is prosecuted. The plaintiff can not claim, and does not claim, that the evidence affords him a better title to relief than does his pleading.

Does the petition state facts constituting a cause of action within the jurisdiction of the district court or of this court? An answer to this question excludes from consideration the contention of the defendant, based upon an interpretation of the legal effect of various transactions respecting the granted lands, as affected by the above mentioned act of congress incorporating the Union Pacific Railroad Company, according to which it is claimed that the quarter section in controversy had been lawfully disposed of prior to the 3d day of March, 1899, and within three years after the entire completion of the road. Section 4 of the act of congress of March 3d, 1891 (U. S. Statutes at Large, vol. 26, p. 1097, ch. 561), entitled "An act to repeal timber-culture laws and for other purposes," enacts as follows:

"That chapter four of title thirty-two, excepting sections twenty-two hundred and seventy-five, twenty-two hundred and seventy-six, and twenty-two hundred and eighty-six of the Revised Statutes of the United States, and all other laws allowing preemption of the public lands of the United States, are hereby repealed."

We think it is quite clear that this is a repeal of section 2301, chapter 5, page 421 of the Revised Statutes, which was

intended to extend to persons having homestead entries the
privileges of preemption, as respected lands upon which
they had made settlements, which were extended to other
persons by the preceding chapter.   In other words, it is
our opinion that, as respects public lands concerning which
there has been no especial grant or legislation, there is,
and has been, since the passage of the act of March 3,
1891, no privilege of preemption, and that, as to such lands,
it is the intention of congress that they shall be acquired
by individuals only by continuous occupation and cultiva-
tion pursuant to the statutes relative to homestead settle-
ments.   Now, the most that can be claimed as tending to
support the plaintiff's contention is that the quarter sec-
tion of land in question, not having been lawfully disposed
of by the railroad company or its successors is, as to every-
body except the latter, to be regarded as though it had
at all times remained, and was now, a part of the public
domain.   That is to say, in such view of the matter, title
to the land can be acquired only through the operation of
the homestead laws of the United States, by continuous oc-
cupation and cultivation for a period of not less than five
years, and without the privilege of "commutation" by the
payment of money within that period.   Whether, as a con-
sequence of the withdrawal of this privilege, or of the aboli-
tion of the right of original preemption, the railroad com-
pany and its successors have been unjustly deprived of the
purchase price of $1.25 an acre guaranteed by the act of
1862, or whether the federal government will be liable to
it or them for this price of so much of said lands as shall
be appropriated by homestead settlement, are questions
with which, in the circumstances of this case, at least, the
plaintiff has no concern.   It is manifest that neither the
present defendant, nor either of its predecessors in interest,
has or has had any right, power or authority to administer
the public land laws of the United States, and the most
that can be said with respect to the proviso in section 3 of
the act of 1862 (U. S. Statutes at Large, vol. 12, p. 492,
ch. 120) is that, in the contingency alleged to have arisen,

it reserved the tract in controversy for acquisition under said laws. That, before the acquisition of a vested right in public lands under such laws, it is competent for congress to withdraw them from entry, is a proposition so nearly self-evident as scarcely to require authority for its support, although it has been repeatedly so decided by the supreme court of the United States. *Hot Springs Cases,* 92 U. S. 698; *Frisbie v. Whitney,* 9 Wall. (U. S.) 187; *Yosemite Valley Case,* 15 Wall. (U. S.) 77. Not until the legal title has passed from the United States will the courts inquire into the circumstances preceding or attending the transfer, for the purpose of deciding which of two or more conflicting claimants has the superior equity. *Shepley v. Cowan,* 91 U. S. 330; *Johnson v. Towsley,* 13 Wall. (U. S.) 72, 87; *Rector v. Gibbon,* 111 U. S. 276, 290.

It is our opinion that the above mentioned reservation in the proviso of section 3 of the act of 1862, had sole reference to the purchase of public lands by preemption and that it was therefore, as respects the privileges of the public and of citizens, wholly repealed by the act of March 3, 1891; but, for the purpose of restricting the discussion to as narrow limits as possible, we have preferred to treat it, as does the plaintiff, as including the privilege of settlement and acquisition under the homestead laws. As already said, it is quite clear that the defendant has no duty to perform and no authority to exercise under these latter laws, the administration of which is committed solely to a governmental department created by congress. Hence, when the plaintiff tendered his money to the defendant and demanded from it a conveyance of the land in controversy, he required of the latter an act which it was not only under no obligation to perform but the doing of which, if the lands are open to entry under the laws of congress, would have conferred no title or right of possession upon the plaintiff. By upholding the plaintiff's claim the courts would, in practical effect, assume the administration of the public land laws, or, at least, the supervision of the administration of those laws by the department of the interior of

the United States, a thing which even the federal courts are confessedly without jurisdiction to do.

The plaintiff seeks to evade the force of the decisions of the supreme court of the United States last above cited, by the contention that the title to the lands has passed from the United States to the defendant, but that the latter holds that title in trust, and that to deal with trusts, and enforce their execution, is among the well known heads of equity jurisprudence. We do not think that this proposition advantages the plaintiff. If it be conceded, but this is a matter we are not called upon to decide, that the defendant does hold the title in trust, the plaintiff as an individual is not, but the government and people of the United States in their collective and corporate capacity are, beneficially interested therein, and the nature of it is to permit the legal title to the lands to be acquired through the operation of the public land laws under the administration of the land department of the United States. In the execution of such a trust the defendant has no active duty to perform and no right or authority to intermeddle, and the consummation thereof it is powerless to defeat or obstruct. The plaintiff has acquired no possession or right of possession of the tract in question, nor, if the lands are open to public entry, can the defendant confer any upon him. A conveyance to him by the defendant, voluntarily or under the coercion of a decree of this court, would, if the plaintiff's major premise is true, leave the lands in dispute still subject to entry and settlement under the homestead law and would confer no prior or superior right to the exercise of the homestead privilege upon him. This is no more than applying to the contention of the plaintiff the identical argument which he urges against the defendant. He says, in effect, that the defendant, as a purchaser at a mortgage foreclosure sale, is a grantee of the Union Pacific Railroad Company, the donee of the lands, and acqured the latter with knowledge of, and subject to, the trust, and that, notwithstanding the conveyance, they are still subject to entry and settlement under the homestead

laws of the United States. If this contention is true, the proposition is self-evident that if the defendant should convey them, or if they should be conveyed by judicial decree, to the plaintiff, he having like knowledge, their legal *status* would remain unchanged beyond the unimportant fact of the substitution of one trustee for another. If the plaintiff has been wrongfully denied the right of entry and settlement by the register of the land office, the defendant and the courts of this state are powerless to aid him.

The foregoing views having obtruded themselves upon us in the course of the consideration of the record and authorities, without having been urged, or so much as suggested, by counsel, either by brief or oral argument, the court, upon being informed of that fact, ordered a rehearing at which they were fully and exhaustively discussed. The reargument served only to confirm all of us in our preconceived ideas. Whatever other opinions may be entertained concerning the construction and effect of the series of acts of congress affecting the lands in controversy, it is clear, beyond dispute, that if there remains any condition, restriction or limitation upon the title or right of disposition of the donee of the lands, or its successors in interest, it consists in an obligation to hold them subject to settlement and entry under all or some of the public land laws of the United States. It is clear also, as has been already said, that congress has seen fit to commit the administration of those laws solely and exclusively to the land department of the United States, and that with the exercise of the powers thus created and conferred, neither the district court nor this court has jurisdiction to intermeddle.

It is recommended that the judgment of the district court be reversed, and that the action be dismissed.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and that the action be dismissed.

REVERSED.